Electronically Filed
Intermediate Court of Appeals
CAAP-11-0000697
28-NOV-2014
08:47 AM

NO. CAAP-11-0000697

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


LOUIS ROBERT SANTIAGO, as Trustee of the Louis Robert Santiago
Revocable Living Trust dated November 17, 1999, as amended,
and YONG HWAN SANTIAGO, as Trustee of the Yong Shimabukuro
Revocable Living Trust dated July 25, 1996, as amended,
Plaintiffs-Appellants/Cross-Appellees,
v.
RUTH TANAKA, Defendant-Appellee/Cross-Appellant
and
JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10;
DOE PARTNERSHIPS 1-10; and DOE ENTITIES 1-10, Defendants.


APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 08-1-0094)


MEMORANDUM OPINION
(By: Fujise, Presiding Judge, Reifurth and Ginoza, JJ.)

Plaintiffs-Appellants/Cross-Appellees Louis Robert
Santiago (Louis), as Trustee of the Louis Robert Santiago
Revocable Living Trust, and Yong Hwan Santiago (Yong), as Trustee
of the Yong Shimabukuro Revocable Living Trust (collectively, the
Santiagos), appeal from a "Judgment", filed June 28, 2011, in the
Circuit Court of the Fifth Circuit[1] (circuit court). This case
involved competing claims that seller, Defendant-Appellee/Cross-
Appellant Ruth Tanaka (Tanaka), failed to disclose material terms
of a land sale contract, and buyers, the Santiagos, defaulted on
the terms of their partially seller-financed purchase. The
circuit court entered judgment in favor of Tanaka, ordered a Writ

_____

[1] The Honorable Kathleen N.A. Watanabe presided.

of Ejectment against the Santiagos, awarded Tanaka attorneys' fees and costs, and dismissed all other claims, counterclaims, cross-claims and third-party claims.

In their appeal, the Santiagos challenge the circuit court's "Findings of Fact, Conclusions of Law and Order", filed June 8, 2011 (Circuit Court's FOF/COL); the "Writ of Ejectment", filed June 28, 2011; the "Order Denying [the Santiagos'] Motion to Reconsider, Alter, and/or Amend the [Circuit Court's FOF/COL] and Judgment Thereon", filed August 4, 2011 (Order Denying Motion to Reconsider); and the "Order Granting in Part and Denying in Part [Tanaka's] Motion for Fees and Costs", filed August 22, 2011 (Order re Fees and Costs).

On appeal, the Santiagos contend the circuit court erroneously (1) entered judgment in favor of Tanaka and denied their motion to reconsider, and (2) awarded Tanaka attorneys' fees and costs.

Tanaka cross-appeals from the Judgment, and challenges the Circuit Court's FOF/COL and the Order re Fees and Costs. Tanaka asserts the circuit court erred by declining to award (1) a deficiency judgment, (2) damages, and (3) additional attorneys' fees and costs.

For the reasons stated below, we affirm.

## I. Background

### A. Purchase Contract and Foreclosure

This appeal stems from the Santiagos' partially seller-financed purchase of the Nawiliwili Tavern on Kaua'i (Tavern) from Tanaka in 2006.

Over a decade earlier, in 1995, Tanaka entered into an agreement with neighbor James Jasper Enterprises, Ltd., (Jasper) to connect the Tavern to Jasper's existing private sewage system. The agreement, entitled "Agreement for Maintenance and Operation of Wastewater System and Connection to Wastewater System Located at Nawiliwili, Kauai, Hawaii" (Wastewater Agreement), provided the following pertinent terms:

> 5. Tanaka agrees to pay Jasper monthly maintenance charges in the amount of One Hundred Fifty Dollars ($150.00)

per month . . . . . Jasper reserves the right to adjust the deposit annually in a sum not exceeding twenty percent (20%) of the amount paid in the year immediately preceding.

. . . .

7. Tanaka agrees to pay Jasper the sum of One Hundred Fifty Dollars ($150.00) as a bi-monthly cleanout charge for the Jasper [pump station]. . . . Jasper reserves the right to adjust the deposit annually in a sum not exceeding twenty percent (20%) of the amount paid in the year immediately preceding.

In 2005, after seven years as a tenant, Louis Santiago submitted an offer to Tanaka's property manager, Wayne Richardson (Richardson), to purchase in fee simple the land upon which the Tavern sits entitled "Deposit Receipt Offer and Acceptance (DROA)". The parties exchanged a series of counteroffers, all based on the original DROA. In Tanaka's January 19, 2006 counteroffer, Tanaka offered to accept monthly payments as payment of the principal purchase price. In her breakdown of the monthly payments, Tanaka identified "Sewer Fee & Assessments" in the amount of $150.[2] Louis did not accept the counteroffer.

Around March 27, 2006, Tanaka made a counteroffer that Louis accepted. Of the agreed upon $1,300,000 purchase price, $500,000 was seller financed. The contract included a Purchase Money Mortgage.

On or about April 8, 2006, Tanaka provided to Louis's real estate agent, Glenn Takase (Takase) of Coldwell Banker Day-Lum Properties, a "Seller's Real Property Disclosure Statement" with eleven attachments. Amongst the attachments, Tanaka provided the Wastewater Agreement and a series of letters from the County of Kauaʻi noting that the Tavern was connected to Jasper's pump station. Louis initialed the Disclosure Statement and acknowledged review and acceptance.

Tanaka and the Santiagos executed a Promissory Note (Note) and "Mortgage, Security Agreement and Financing Statement" (Mortgage) both dated August 10, 2006. The Mortgage was recorded on the same day. The Note reserved to Tanaka the power to

_____

[2] Tanaka repeated this information in a February 7, 2006 counteroffer that Louis again did not accept.

3

accelerate collection of the entire principal sum and accrued interest should the Santiagos default. The Mortgage additionally provided that upon default, Tanaka could foreclose "by court proceeding . . . , or, as now or then provided by law, by advertisement and sale of the mortgaged property or any part or parts thereof at public auction . . . ."

In October 2006, Jasper sent Jay Geffert (Geffert), the manager of the Tavern, a letter apparently in response to Geffert's request for an explanation of invoices that had been forwarded to the Tavern. The letter provided that the current monthly maintenance charge for the Tavern's use of Jasper's sewer lines was $1,114.54 per month, the bi-monthly clean out charge was also $1,114.54 (both allegedly escalated the maximum 20% each year since execution of the Wastewater Agreement), and demanded payment of an outstanding balance of $5,804.85 from the operators of the Tavern.

In response, Geffert acknowledged that he knew of the original terms of the Wastewater Agreement but denied notice of the current escalated maintenance and clean out charges. Subsequently, Louis[3] filed a complaint against Jasper and Tanaka in the circuit court (Civ. No. 07-1-0141). The circuit court dismissed the case without prejudice on December 20, 2007, to allow the parties to engage in good-faith mediation.

In a hand-written letter dated March 10, 2008, Louis announced that he would halt payment to Tanaka on his Note due to litigation, unilaterally declaring that he would place his monthly payments into a bank account throughout the course of litigation. Louis's monthly payment was due on March 10. In a letter dated March 11, 2008, the day after payment was due, Tanaka, through counsel, gave notice of default and intention to foreclose on the property pursuant to the Note, the Mortgage, and Hawaii Revised Statutes (HRS) Chapter 667. In the letter, Tanaka informed the Santiagos that "the entire principal sum and accrued

---

[3] Yong was not named as a party.

interest, plus attorneys' fees and costs, are hereby declared *immediately due and payable.*"

On November 21, 2008, Tanaka recorded a "Mortgagee's Affidavit of Foreclosure Sale Under Power of Sale" in the Bureau of Conveyances. The affidavit provides that at a public auction on October 24, 2008, Tanaka submitted the highest bid in the amount of $365,000.

### B. Procedural History

On August 5, 2008, the Santiagos filed a First Amended Verified Complaint against Tanaka and asserted seven (7) claims.[4] In turn, Tanaka filed an answer and asserted eleven (11) counterclaims.[5]

By the time of trial, of the Santiagos' seven claims, only their claim for Non-Disclosures and the portion of the Negligent Misrepresentation claim regarding sewer fees remained undecided. After a bench trial, the circuit court issued its FOF/COL and ordered judgment entered in favor of Tanaka on the Santiagos' remaining claims and the first four of Tanaka's counterclaims. Judgment was entered in accordance with the FOF/COL. On June 28, 2011, the circuit court entered a Writ of Ejectment against the Santiagos. Subsequently, in the Order re Fees and Costs, the circuit court awarded Tanaka attorneys' fees and costs in the amount of $152,246.61.

### II. Discussion

#### A. The Santiagos' Appeal

##### 1. Judgment in Favor of Tanaka Regarding the Santiagos' Claims

The Santiagos contend that the circuit court erroneously entered judgment in favor of Tanaka on the Santiagos'

---

[4] The seven claims were: Breach of Agreement; Breach of Good Faith and Fair Dealing; Negligent Misrepresentation; Non-Disclosures; Violation of Plaintiff's Due Process; Breach of Duty of Good Faith Mediation; and Violation of HRS § 667-42 (Supp. 2010).

[5] The eleven counterclaims were: Breach of Note; Breach of Mortgage; Breach of Covenant of Good Faith and Fair Dealing; Ejectment; Judicial Foreclosure; Failure to Mediate in Good Faith; Breach of Confidentiality; Violation of Order; Waste; Impairment of Security; and Rescission.

claims for Non-Disclosures and Negligent Misrepresentation because Tanaka clearly failed to disclose material facts.

In their opening brief, the Santiagos fail to identify in their points of error section the circuit court's FOFs or COLs that they challenge, as is required by Hawaiʻi Rules of Appellate Procedure (HRAP) Rule 28(b)(4)(C). Thus, the Santiagos have failed to properly challenge the circuit court's FOF/COL. To the extent any FOF or COL is not challenged on appeal, it is binding on this court. Wong v. Cayetano, 111 Hawaiʻi 462, 479, 143 P.3d 1, 18 (2006); Okada Trucking Co. v. Bd. of Water Supply, 97 Hawaiʻi 450, 458, 40 P.3d 73, 81 (2002). However, because we try to address parties' arguments on the merits where possible, we will address the Santiagos' arguments to the extent discernible. Marvin v. Pflueger, 127 Hawaiʻi 490, 496, 280 P.3d 88, 94 (2012). "A COL is not binding upon an appellate court and is freely reviewable for its correctness. A COL that is supported by the trial court's FOFs and that reflects an application of the correct rule of law will not be overturned." Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 119, 839 P.2d 10, 28-29 (1992) (internal citations omitted).

In regards to the Santiagos' arguments on appeal, the relevant portions of the circuit court's rulings appear to be that

> A. [The Santiagos], and not [Tanaka], must bear the burden of proof at trial. [The Santiagos] must prove non-disclosure. Given the disclosure documents, [the Santiagos] failed to prove non-disclosure. Accordingly, [Tanaka] is entitled to prevail.
>
> . . . .
>
> K. . . . Once [Tanaka] disclosed the private sewer system (and provided a copy of the sewer agreement), she discharged her disclosure obligations. Then the responsibility shifted to the buyers, who are charged with reviewing the disclosures and addressing any wastewater issues.
>
> L. [The Santiagos] had all the information necessary to make further inquiry. The Wastewater Agreement sets forth the "monthly maintenance charges" (¶ 5) and the "bi-monthly cleanout charge" (¶ 7) and makes clear that such Jasper charges are separate from "sewer bills as may be required by the County" (¶ 6). . . . .

M. The Wastewater Agreement provides for annual escalation (up to 20%) of both the monthly maintenance charges and the bi-monthly cleanout charge. . . .

. . . .

X. [Tanaka] provided timely and appropriate disclosures of all material facts (and she confirmed receipt of same).

The Santiagos argue that the circuit court's rulings are incorrect under Restatement (Second) of Torts § 551 (1977)[6] because Tanaka has failed to disclose material facts, thus the circuit court erred in concluding that Tanaka provided sufficient disclosure.[7] Section 551 has been adopted in Hawai'i. See Pancakes of Hawaii, Inc. v. Pomare Props. Corp., 85 Hawai'i 300, 318, 944 P.2d 97, 115 (App. 1997); Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours & Co., 116 Hawai'i 277, 284 n.3, 172 P.3d 1021, 1028 n.3 (2007). However, the Santiagos fail to show that the circuit court erred.

The Santiagos assert that Tanaka had a duty to disclose the current escalated amounts due to Jasper, or, in the

---

[6] Restatement (Second) of Torts § 551 provides:

(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

(a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and

(b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading[.]

[7] The Santiagos also argue that Tanaka has committed Negligent Misrepresentation under Restatement (Second) of Torts § 552 (1977). However, the Santiagos make no argument explaining how the Restatement standard has been violated beyond their general argument regarding failure to disclose. See Laeroc Waikiki Parkside, LLC v. K.S.K. (Oahu) Ltd. P'ship, 115 Hawai'i 201, 228-29, 166 P.3d 961, 988-89 (2007) (noting that appellant made no attempt to apply the Restatement standard and thus failed to demonstrate a genuine issue of material fact existed). For instance, the Santiagos make no argument regarding the extent of Tanaka's intent to influence the Santiagos.

alternative, disclose to the Santiagos that they would be required to pay Jasper's fees, negotiate different terms, or construct their own sewer system. Further, the Santiagos contend that Tanaka had a duty to correct her representation in a counteroffer that the monthly sewer fees were only $150 so as to prevent misleading the Santiagos.

In addition to the Santiagos' uncontested receipt of the Wastewater Agreement, the Santiagos do not dispute that the Disclosure Statement expressly provided notice that the Tavern was connected to a private sewer system owned by Jasper. The terms of the Wastewater Agreement, signed in 1995, provide that the monthly maintenance charge and bi-monthly clean out charge were subject to 20% increases each year at the discretion of Jasper.[8] The Santiagos do not dispute the circuit court's FOF no. 9 that their own real estate broker, Takase, advised the Santiagos in writing to check on the private sewer system. In spite of this, the Santiagos failed to inquire further.

In light of Tanaka's disclosures, the circuit court properly concluded that the Santiagos should have exercised due diligence. The Santiagos failed to investigate the sewer system. Per the DROA, the Santiagos had a 30-day time period in which to investigate the property and rescind the agreement to purchase the property. The DROA also provided that upon Tanaka's disclosure, the Santiagos had five (5) days to examine the

---

[8] The Santiagos express briefly in their opening brief their contention that the language of the Wastewater Agreement only provides that the "deposit" may be increased 20% annually and does not expressly provide that the monthly maintenance charge and bi-monthly clean out charge may be so increased. The Santiagos argue that "deposit" refers to a $300 one-time payment from Tanaka to Jasper required under a different clause of the Wastewater Agreement. The circuit court rejected this interpretation of the contract in COL no. M: "The Wasterwater Agreement provides for annual escalation (up to 20%) of both the monthly maintenance charges and the bi-monthly cleanout charge." The Santiagos offer no substantive argument regarding the circuit court's contract interpretation that would afford meaningful review of this COL or the contract language. Thus, the Santiagos have failed to carry their burden as appellants on appeal. Exotics Hawaii-Kona, 116 Hawai'i at 309 n.21, 172 P.3d at 1053 n.21. The Santiagos also do not explain why the contractual language, even if referring nominally to a "deposit", would not have at least put the Santiagos on inquiry notice of potential escalation of the charges when reference to Jasper's authority to increase the "deposit" is included in each of the separate and distinct charge clauses.

statement and rescind the DROA. The Santiagos did not exercise their rights under the contract to rescind the transaction. The Santiagos do not offer a substantive argument against COL no. E: "To the extent that the buyers' [sic] failed to exercise their right of inspection, there is no liability on the part of the seller, especially in the context of an experienced businessman purchasing commercial real estate."

The circuit court's unchallenged FOFs, including FOFs 6-9 and 12-14, established that the Santiagos were put on notice of the monthly payments made to Jasper and that Jasper reserved the right to raise payments 20% annually. In addition to the clear documentary evidence, the circuit court found that "the witness testimony did not establish Plaintiff's claim."[9] "[Appellate courts have] long observed that it is within the province of the trier of fact to weigh the evidence and to assess the credibility of the witnesses, and this court will refrain from interfering in those determinations." LeMay v. Leander, 92 Hawai'i 614, 626, 994 P.2d 546, 558 (2000).

The Santiagos' remaining argument based on section 511 is that Tanaka had a duty to correct a previous representation made in Tanaka's rejected January 19, 2006 counteroffer that the monthly sewer fees were $150.[10] Section 551 only requires a party to correct a prior representation when the party knows clarification is necessary to prevent the representation from being misleading. The Santiagos make no argument regarding Tanaka's knowledge. Even assuming the Santiagos did make such an argument, there is no evidence suggesting that Tanaka knew clarification was necessary. The $150 figure was stated in a

---

[9]  The circuit court concluded that "Plaintiff Mr. Santiago was not credible, and the testimony of Mr. Geffert and Mr. Jasper was not helpful to Plaintiffs. The testimony of Mr. Tanaka, Mr. Takase and Mr. Richardson was credible and favorable to Defendant."

[10]  The Santiagos also contend that Tanaka was required to correct the alleged misrepresentation in the Disclosure Statement that she had no knowledge of an unrecorded interest in the property. Yet, the Santiagos offer no substantive argument against the circuit court's FOF no. 10 or COL no. N, which both provide that the Wastewater Agreement is not an interest in real property.

9

rejected counteroffer that formed no part of the final deal. Tanaka fully disclosed her agreement with Jasper and Louis acknowledged receipt and review of the disclosed document. The Wastewater Agreement provided actual notice that the Jasper charges were separate from the County fees. The Santiagos asked no follow up questions prior to closing the sale. There is no evidence Tanaka knew her prior statement was misleading.

In light of the entirety of Tanaka's disclosures, the Santiagos have not demonstrated the circuit court erroneously ruled in favor of Tanaka on the Santiagos' claims.

## 2. Judgment Regarding Tanaka's Counterclaims

The Santiagos contend the circuit court erroneously entered judgment in favor of Tanaka on Tanaka's counterclaims because the Mortgage did not contain a power of sale clause and the Santiagos cured the alleged default. The Santiagos also contend the court erred because its decision allowed Tanaka to have title to the property and keep all money paid by the Santiagos.[11] In response, Tanaka *inter alia* asserts that the Santiagos' appeal of her counterclaims is moot because she has sold the property to a third party. Thus, before addressing the Santiagos' specific contentions, we must review whether the appeal is moot.

### a. Mootness

In response to the Santiagos' appeal related to the foreclosure and ejectment, Tanaka argues that the appeal is moot because the property has been sold to a third party[12] thus this court cannot grant effective relief. For the reasons below, we agree that the Santiagos' appeal related to title and possession of the property is moot.

---

[11] The Santiagos also contend that the circuit court should not have found in favor of Tanaka on her counterclaims because they were premised on an invalid and unenforceable contract. However, as covered above, the Santiagos have not demonstrated the circuit court erred in ruling in favor of Tanaka regarding the Santiagos' contract claims, thus this related argument is without merit.

[12] The Santiagos do not dispute Tanaka's assertion that the buyer was a bona fide purchaser.

"[M]ootness is an issue of subject matter jurisdiction." <u>Hamilton ex rel. Letham v. Lethem</u>, 119 Hawaiʻi 1, 4, 193 P.3d 839, 842 (2008). "[T]he issue of subject matter jurisdiction can be properly raised at any time." <u>Garner v. State</u>, 122 Hawaiʻi 150, 168 n. 15, 223 P.3d 215, 233 n. 15 (App. 2009). "The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect[.] . . . Courts will not consume time deciding abstract propositions of law or moot cases, and have no jurisdiction to do so." <u>Wong v. Bd. of Regents, Univ. of Hawaii</u>, 62 Haw. 391, 394-95, 616 P.2d 201, 204 (1980). Thus, when events have rendered it impossible for a court to grant an effective remedy, the court will not render judgment on the issue. <u>See</u> <u>Lathrop v. Sakatani</u>, 111 Hawaiʻi 307, 312-13, 141 P.3d 480, 485-86 (2006).

Tanaka argues that under <u>Lathrop</u> and Hawaiʻi Rules of Civil Procedure (HRCP) Rule 62, this court cannot grant effective relief because title has passed to a third party and the Santiagos should have obtained an injunction or stay pending appeal to prevent mootness arising from the subsequent sale.

The Santiagos argue that their appeal is not moot because the Santiagos sought a stay pending appeal and because the Santiagos appeal from a trial on the merits regarding Tanaka's right to conduct the non-judicial foreclosure. The Santiagos argue that even if the issues of title and possession are moot, issues of the amount of money retained by and awarded to Tanaka are not moot.

In <u>Lathrop</u>, the Hawaiʻi Supreme Court reasoned that "the sale of the property prevents the appellate court from granting any effective relief" because, even if the court erred in expunging a lis pendens, the plaintiffs could not record another lis pendens because no party still held title to the property. 111 Hawaiʻi at 313, 141 P.3d at 486; <u>IndyMac Bank v. Miguel</u>, 117 Hawaiʻi 506, 521-22, 184 P.3d 821, 836-37 (App.

11

2008). While Lathrop involved a lis pendens, mootness depended on the court's ability to craft an effective remedy.

The Lathrop court placed the burden on the appellant to preserve the justiciability of issues for appeal. 111 Hawai'i at 313, 141 P.3d at 486 ("[I]t is appellant's burden to seek a stay if post-appeal transactions could render the appeal moot." (Citation and internal quotation marks omitted)). "[T]he sale of property generally precludes effective relief. Nevertheless, a party may escape the doctrine of mootness by taking appropriate action such as seeking a stay . . . ." Thorn v. Walker, 912 A.2d 1192, 1195-96 (D.C. Cir. 2006) (citing Lathrop) (internal citation omitted). The Santiagos filed a motion for stay pending appeal. However, the circuit court denied the motion as moot because the Santiagos had already vacated the premises. The Santiagos did not properly seek an injunction, and they failed to tender a supersedeas bond or file a motion to set a supersedeas bond as required to obtain a stay or injunction pursuant to HRCP Rule 62(c), (d). The Santiagos do not assert the circuit court erred in denying their motion for a stay. Also, the Santiagos did not file a motion with this court for a stay or injunction pending appeal. Lastly, after the circuit court expunged the Santiagos' Notice of Pendency of Action, the Santiagos did not file a motion for stay of the expungement. The closed sale in this case cannot be undone. See City Bank v. Saje Ventures II, 7 Haw. App. 130, 133-34, 748 P.2d 812, 814-15 (1988).

Consequently, this court cannot grant effective relief in terms of title or possession of the property.[13] Thus, the appeal as to title or possession of the property is moot. However, Tanaka's sale of the property to the third party does

---

[13] The Santiagos assert that an exception to the mootness doctrine applies. The Santiagos single out that review of non-judicial foreclosures in which the court does not grant a stay will always evade review. The Santiagos offer no further argument on the subject. Even assuming the Santiagos offered a substantive argument, the "capable of repetition, yet evading review" exception does not apply. See Lathrop, 111 Hawai'i at 315, 141 P.3d at 488 ("[B]ecause [the party] did not avail themselves of the mechanisms that would have preserved the issue for review, we are compelled to hold that the issue is moot and the exceptions to the mootness doctrine do not apply.").

not preclude us from crafting effective relief, if warranted, regarding the Santiagos' contention that the circuit court improperly awarded to Tanaka both the property and all amounts paid by the Santiagos. We thus review the Santiagos' arguments in this regard to the extent they have been preserved for appeal.

**b. Tanaka's Retention of Payments By the Santiagos**

The Santiagos argue that the circuit court erred by allowing Tanaka to take possession and title to the property <u>and</u> retain the amounts paid by the Santiagos on the purchase price, in effect amounting to an alleged inequitable windfall for Tanaka.

Pursuant to HRAP Rule 28(b)(4)(iii), the Santiagos provide citations to the record in their opening brief to indicate where they allegedly brought the asserted error to the attention of the circuit court. Based on our review of the record cited by the Santiagos, they did not raise this forfeiture/windfall argument until their post-trial motion for reconsideration.[14] We therefore review the Santiagos' arguments as a challenge to the circuit court's denial of their motion for reconsideration.

> [T]he purpose of a motion for reconsideration is to allow the parties to present new evidence and/or arguments that could not have been presented during the earlier adjudicated motion. Reconsideration is not a device to relitigate old matters or to raise arguments or evidence that could and should have been brought during the earlier proceeding.

<u>Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., Ltd.</u>, 100 Hawai'i 97, 110, 58 P.3d 608, 621 (2002) (quoting <u>Sousaris v. Miller</u>, 92 Hawai'i 505, 513, 993 P.2d 539, 547 (2000)) (block format altered) (internal quotation marks omitted). The appellate courts review a "trial court's ruling on a motion for reconsideration . . . under the abuse of discretion standard." <u>Id.</u> An abuse of discretion occurs if the trial court

---

[14] Prior to their motion for reconsideration, the Santiagos' arguments centered on prevailing on their claims, which, in their opinion, would preclude Tanaka's non-judicial foreclosure. The only unjust enrichment argument the Santiagos made prior to the motion for reconsideration pertained to Tanaka's counterclaim for property damage, and that if the court awarded her damages on top of title to the property, she would be unjustly enriched. The circuit court did not award damages in this case.

has "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Amfac, Inc., 74 Haw. at 114, 839 P.2d at 26.

It appears that the circuit court denied the motion for reconsideration because the Santiagos essentially attempted to relitigate their contention that the purchase contract should be rescinded and that they were entitled to either recovery of the money they paid to purchase the property or retention of title. In their motion for reconsideration, the Santiagos essentially contended that they could not make their forfeiture/windfall argument during trial because they did not know that Tanaka would receive title to the property as well as retain the amounts paid by the Santiagos, and that such result constituted a manifest error of law. This argument is without merit. Throughout the case, Tanaka asserted that she had properly foreclosed against the Santiagos and in her counterclaim she inter alia sought ejectment of the Santiagos, alleged breach of the note and the mortgage, alleged entitlement to a variety of amounts owed by the Santiagos under the note and mortgage (including principal, interest, late charges, advances, costs, expenses and attorneys' fees), and also sought compensatory damages. At trial, the Santiagos' simply chose to focus on prevailing on their claims as their defense to Tanaka's counterclaims. The Santiagos could have raised their forfeiture/windfall argument during trial and failed to do so.

Even if the merits of the Santiagos' argument are considered, the Santiagos have not shown they are entitled to relief. In regards to payments they made after foreclosure, the Santiagos continued occupancy of the property until the issuance of the Writ of Ejectment in this case. This covered a period of almost three years. Thus, were a court to order return of all money paid to Tanaka, the Santiagos would have operated a business for years on property held in title by Tanaka for free. Further, the Santiagos do not cite to any evidence that demonstrates the value of the property at the time of default or

14

foreclosure, or make arguments on appeal that Tanaka paid an improper price at auction, so as to provide support for an assertion that Tanaka reaped a windfall.

The Santiagos have not demonstrated the circuit court abused its discretion in denying their motion for reconsideration.

### 3. Attorneys' Fees and Costs Awarded to Tanaka

The Santiagos contend that the circuit court erroneously awarded Tanaka $152,246.61 in attorneys' fees and costs, and any award should have been offset by the Santiagos' forfeiture of the purchase price paid to Tanaka. The Santiagos fail to provide any substantive argument in their opening brief containing the reasons for their argument with citations to authorities and the parts of the record relied upon as required by HRAP Rule 28(b)(7) and thus the point is waived.[15] City & Cnty. of Honolulu v. Hsiung, 109 Hawaiʻi 159, 180, 124 P.3d 434, 455 (2005) ("Because the [Appellant's] opening brief fails to include an argument on their claim that the circuit court erred[,] . . . these points of error are deemed waived.").

### B. Tanaka's Cross-Appeal

On cross-appeal, Tanaka contends the circuit court erred in declining to award (1) a deficiency judgment, (2) damages, and (3) the requested attorneys' fees and costs.

### 1. Deficiency Judgment and Damages

Tanaka contends that she submitted admissible evidence that established her entitlement to a deficiency in the amount of $79,441.55 and damages in the amount of "over $100,000."

Tanaka appears to contend that because the court concluded certain testimony was credible,[16] and the Santiagos

---

[15] Arguments raised for the first time in reply briefing are waived. Ass'n of Apartment Owners of Newtown Meadows ex rel. its Bd. of Directors v. Venture 15, Inc., 115 Hawaiʻi 232, 281 n.39, 167 P.3d 225, 274 n.39 (2007).

[16] Tanaka also notes that defendant's exhibit 12, which was not received into evidence, was admissible evidence and supports a deficiency judgment in this case. Tanaka fails to present a substantive argument as to how the circuit court erred in excluding exhibit 12. This argument is waived. HRAP Rule 28(b)(7).

presented no evidence to the contrary, the court erred in not awarding the deficiency judgment and damages. Tanaka cites no legal authority in support of her arguments, let alone any authority that requires the circuit court to rule in one party's favor in this instance. Tanaka fails to comply with the requirements of HRAP Rule 28(b)(7) to provide legal authority in support of her arguments, see Blair v. Ing, 95 Hawaiʻi 247, 253, 21 P.3d 452, 458 (2001) (noting that because the appellants failed to cite any legal authority or provide any supporting argument, the argument was waived), and thus Tanaka fails to demonstrate reversible error. See also Malani v. Clapp, 56 Haw. 507, 517, 542 P.2d 1265, 1271 (1975) ("[T]he burden of proving damages is always upon the plaintiff[.]").

### 2. Attorneys' Fees and Costs

Tanaka contends that the circuit court erred by failing to award the requested attorneys' fees and costs. The circuit court's ruling on a motion for attorneys' fees and costs is reviewed for abuse of discretion. Chun v. Bd. of Trs. of the Emps. Ret. Sys. of the State of Hawaiʻi, 106 Hawaiʻi 416, 431, 106 P.3d 339, 354 (2005).

The circuit court awarded attorneys' fees and costs in the amount of $152,246.61[17] pursuant to HRS § 607-14 (Supp. 2013), the Note, and the Mortgage. In doing so, the circuit court rejected the portions of the requested $268,477.71 that Tanaka self-identified as accrued during prior litigation ($32,627.07) and while pursuing the non-judicial foreclosure ($95,349.35).[18]

Tanaka argues that under HRS § 607-14 and HRCP Rule 54(d)(1), a court must award reasonable attorneys' fees and costs to the prevailing party. Tanaka contends that the court erred in

---

[17] The awarded $152,246.61 consists of $136,001.29 of the initially requested $268,477.71, and $16,245.32 accrued due to post-judgment motions.

[18] An additional $25,000 was deducted from Tanaka's requests due to Tanaka's offer of a discount. We note that Tanaka's break down of requested fees does not equal $268,477.71: Prior Litigation ($32,627.07), Instant Case ($161,001.29), and Foreclosure ($95,349.35). No party assigns any error to this.

denying her motion for fees and costs stemming from the prior litigation and the non-judicial foreclosure because the Santiagos chose to litigate these issues and the Santiagos did not challenge the reasonableness of the requested amounts.

In respect to fees and costs from the prior litigation, in Civ. No. 07-1-0141, the circuit court granted Tanaka's motion to dismiss and explicitly stated that "[e]ach party shall bear its own attorneys' fees and costs." Notwithstanding Tanaka's arguments,[19] the language of the circuit court's order of dismissal is clear.

In regards to the fees and costs stemming from the non-judicial foreclosure, the court denied Tanaka's requested amount because the fees and costs were incurred as a result of the Santiagos' default, not the Santiagos' litigation against Tanaka. Without citing any legal authority, Tanaka argues that because parts of the instant case involved the Santiagos' effort to challenge the foreclosure, attorneys' fees and costs from the non-judicial foreclosure are reasonable. We disagree as there is no legal basis to support this contention. Further, as to reasonableness of the amount awarded, the circuit court requested a breakdown from Tanaka as to the fees that were incurred "for the . . . process of a non-judicial foreclosure." Tanaka self-identified $95,349.35 as related to the foreclosure. Tanaka separately identified the fees and costs accrued in the instant case. The circuit court relied on the amounts provided by Tanaka and thus she cannot complain in that regard.

Tanaka has not demonstrated the circuit court abused its discretion.

## III. Conclusion

For the foregoing reasons, we affirm the "Judgment", filed June 28, 2011; "Findings of Fact, Conclusions of Law and Order", filed June 8, 2011; the "Writ of Ejectment", filed

---

[19] Tanaka argues that, because the claims in the prior litigation and the instant case are functionally identical, all previous work is directly useful to the instant case, and it would be inequitable to penalize Tanaka for the parties' failure to successfully mediate.

June 28, 2011; the "Order Denying Plaintiffs' Motion to Reconsider, Alter, and/or Amend the Court's Findings of Fact, Conclusions of Law and Order, and Judgment Thereon", filed August 4, 2011; and the "Order Granting in Part and Denying in Part Defendant/Counter-Plaintiff Ruth Tanaka's Motion for Fees and Costs", filed August 22, 2011, in the Circuit Court of the Fifth Circuit.

DATED:  Honolulu, Hawai'i, November 28, 2014.


On the briefs:

Gary Victor Dubin
Frederick J. Arensmeyer
Lila C.A. King
for Plaintiffs-Appellants/
Cross-Appellees

Robert Goldberg
Angela Anderson
(Hale & Goldberg, LLP)
for Defendant-Appellee/
Cross-Appellant

Presiding Judge

Associate Judge

Associate Judge